Slip Op. 13-41

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MUKAND, LTD.,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>                              Defendant,<br><br>and<br><br>CARPENTER TECHNOLOGY CORPORATION,<br><br>                              Defendant-Intervenor. | Before: Richard W. Goldberg, Senior Judge<br>Court No. 11-00401<br><br>**PUBLIC VERSION** |

**OPINION AND ORDER**

[Plaintiff's Motion for Judgment on the Agency Record under USCIT Rule 56.2 is denied.]

Dated: March 25, 2013

*Peter J. Koenig*, Squire Sanders (US) LLP, of Washington, DC, for plaintiff.

*David D'Alessandris*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Melissa M. Brewer*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Grace W. Kim*, Kelley Drye & Warren LLP, of Washington, DC, for defendant-intervenor.

   Goldberg, Senior Judge: Plaintiff Mukand Ltd. ("Mukand") contests the final results of the U.S. Department of Commerce's (the "Department" or "Commerce") administrative review of the antidumping duty order on Stainless Steel Bar from India. *Stainless Steel Bar from India*, 76 Fed. Reg. 56,401 (Dep't Commerce Sept. 13, 2011) (final results of antidumping duty administrative review and partial order revocation) ("*Final Results*"). Mukand asserts that the

Department erred in applying adverse facts available ("AFA") when calculating Mukand's dumping margin for the period of review. Alternatively, Mukand argues that even if resort to AFA was appropriate, the Department nonetheless erred in employing "total AFA" instead of "partial AFA" to arrive at the dumping margin. For the reasons set forth below, the court denies Mukand's Rule 56.2 Motion for Judgment on the Agency Record and sustains Commerce's determination to apply total AFA.

## FACTUAL BACKGROUND

On March 30, 2010, the Department initiated an administrative review of the antidumping duty order on Stainless Steel Bar from India, pursuant to the request of domestic interested parties. *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 75 Fed. Reg. 15,679 (Dep't Commerce Mar. 30, 2010). As part of that review, the Department issued a series of questionnaires to Mukand wherein it sought information designed to assist the Department in calculating Mukand's dumping margin. Most relevant to this case, Commerce requested that Mukand report the costs attributable to producing various sizes of stainless steel bar.[1] According to Commerce, this information was necessary to accurately perform its sales-below-cost test, to calculate the difference in merchandise ("DIFMER") adjustment, and potentially to arrive at a constructed value. *See, e.g.*, Issues & Decision Memorandum, A-533-810 (Aug. 31, 2011), at 26 ("*I&D Mem.*").

Commerce first requested size-specific cost information in its initial questionnaire to Mukand. Admin. R. Pub. Doc. ("P.R.") 54, at D-25. Upon receipt of Mukand's response, Commerce noted that Mukand assigned the same production costs across all product sizes. Informing Mukand that it did "not consider one broad based average cost to be reasonable for

---

[1] In this case, size was one of the six product characteristics making up the CONNUM. P.R. 5, at 3 ("*AFA Mem.*"). The remaining characteristics were general type of finish, grade, re-melting, type of final finish, and shape. *Id.*

purposes of" its calculations, Commerce stated that it was "imperative" that Mukand furnish unique costs regardless of whether it tracked such costs in its normal accounting records. P.R. 108, at 3. Commerce alternatively afforded Mukand the opportunity to "quantify . . . and explain" any reasons the company may have for believing the size-based cost differential to be insignificant. *Id.*

In its response, Mukand declined to provide unique cost information and instead attempted to explain why its costs did not vary from one product size to the other. *Id.* at 3–4. Specifically, Mukand briefly responded that where product grade and type of finishing operation are the same, direct material costs do not vary with size. *Id.* In a subsequent questionnaire, Commerce reiterated its need either for cost estimates or a more thorough narrative quantifying and explaining Mukand's belief that size-based cost differences were insignificant. P.R. 145, at 8–9. Again, Mukand asserted that when all other physical characteristics remain the same, costs do not vary with size. *Id.* at 9.

Commerce attempted to elicit the information a fourth time, noting that it "would appear as though large sizes would require less processing and would incur less processing than smaller sizes." P.R. 172, at 1. Mukand conceded that "[t]heoretically," there could be a cost difference, but that it was insignificant because smaller sizes could be processed at faster speeds than larger sizes. *Id.* at 2. However, Mukand did not provide any quantifiable data to support its assertion because it believed the costs associated with those calculations were greater than the benefit. *Id.*

Unsatisfied with Mukand's narrative, Commerce sought the information a final time before releasing its preliminary results. In its supplemental questionnaire, Commerce identified and elaborated on several flaws that it perceived in Mukand's response. Specifically, Commerce sought information with respect to two factors, rolling time and weight, that it believed would

impact size-based costs.[2]  P.R. 206, at 1–5.  To assist Mukand in explaining why those factors did not significantly affect costs, Commerce asked a series of targeted and specific questions.  *Id.*  The Department also instructed Mukand to contact them if their request was unclear, if Mukand was unable to supply the information, or if the Department was otherwise mischaracterizing Mukand's production processes.  *Id.*  Commerce made clear that failure to cooperate with its request could result in reliance on facts available.  *Id.* at 5.

Mukand did not contact the Department, but again attempted to explain its basis for not reporting size-specific costs.  Mukand acknowledged that there was likely a cost difference among sizes, however it "fe[lt] from experience" that the difference was insignificant and that, in any event, there was no "reasonable *and* verifiable way" to estimate the costs.  *Id.* at 2–4.  Mukand apparently thought that Commerce's reliance on rolling time and weight ignored the company's broader production process.  Essentially, Mukand maintained that size-based production costs varied depending on the processing stage.  For example, while smaller bars incurred greater production costs than larger bars at the hot rolling stage, the opposite was true of production costs at the heat treating stage.  *Id.*  The result of the different production processes, Mukand maintained, was that variable size-based costs were virtually the same on the aggregate.  *Id.*  Nonetheless, Mukand provided no concrete data in support of this argument, believing there existed no "reasonable *and* verifiable way" to isolate the costs.  *Id.* at 2–4.

Ultimately finding Mukand's collective responses deficient, Commerce preliminarily resorted to AFA to calculate Mukand's dumping margin.  *Stainless Steel Bar from India*, 76 Fed. Reg. 12,044, 12,047 (Dep't Commerce Mar. 4, 2011) (preliminary results).  In comments on the

---

[2] With respect to rolling time, Commerce believed that smaller bars would have undergone more rolling and, thus, would be associated with a longer rolling time and an enhanced rolling cost.  With respect to weight, Commerce noted that smaller, lighter bars should have a higher per kilogram rolling cost than larger, heavier ones.  Therefore, weight would also presumably impact size-based costs. P.R. 206, at 2.

preliminary results, Mukand argued that it materially complied with Commerce's requests since there was no reasonable and verifiable method of reporting size-specific production costs. P.R. 241, at 5–6. However, in a seeming reversal, Mukand offered to submit the same information that it previously maintained was not reasonably obtainable. *Id.* at 10.

In its final results, Commerce refused to consider the new information because it could not review it, solicit interested party comments, and re-calculate a margin within the statutory timetables. *I&D Mem.* at 33. Therefore, Commerce continued to rely on AFA and assigned to Mukand an AFA rate of 21.02 percent. *Id.* at 34. This appeal followed.

## **SUBJECT MATTER JURISDICTION AND STANDARD OF REVIEW**

Mukand commenced this action under section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006). Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. § 1581(c). This Court must uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Thus, the Court will not displace Commerce's adequately supported conclusions simply because reasonable minds may differ as to the proper outcome. *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999). Commerce enjoys broad discretion when implementing U.S. antidumping law and "factual determinations supporting anti-dumping margins are best left to the agency's expertise." *F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000); *see also Ad Hoc Shrimp Trade Action*

*Comm. v. United States*, 33 CIT __, __, 675 F. Supp. 2d 1287, 1304 (2009) (addressing Commerce's broad discretion in determining whether to apply AFA).

The Court employs a two-part analysis when assessing whether Commerce's statutory construction is otherwise "in accordance with law." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842–43 (1984); *Wheatland Tube Co. v. United States*, 495 F.3d 1355, 1359 (Fed. Cir. 2007). Under the *Chevron* rubric, the Court first assesses "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc.*, 467 U.S. at 842. If it has, then the Court must give effect to Congress's unambiguously expressed intent. *Id.* at 842–43. If, however, the statute is silent or ambiguous with respect to the pertinent issue, the Court defers to Commerce's reasonable statutory construction. *Id.* at 843.

## LEGAL FRAMEWORK FOR DETERMINATIONS BASED ON AFA

In an administrative review of an antidumping duty order, Commerce must determine whether the subject merchandise "is being, or is likely to be, sold in the United States at less than its fair value." 19 U.S.C. § 1673(1). To facilitate that determination, Commerce evaluates "the normal value and export price (or constructed export price) of each entry of the subject merchandise" and "the dumping margin for each such entry." *Id.* § 1675(a)(2)(A). U.S. law defines the dumping margin as "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." *Id.* § 1677(35)(A). And that margin serves as "the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." *Id.* § 1675(a)(2)(C).

To assist in calculating a dumping margin, Commerce requests information from respondents through questionnaires. If a respondent (for any reason) fails to satisfactorily respond to Commerce's requests for "necessary information," Commerce must use "facts

otherwise available" to fill the gap in the record caused by respondent's failure. *Id.* § 1677e(a); *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003) (noting that (a) focuses on respondent's failure to provide information, not on the reason for the failure). However, before resorting to facts otherwise available, Commerce must satisfy the statutory requirements of 19 U.S.C. § 1677m(d) and (e). 19 U.S.C. § 1677e(a); *see also Gerber Food (Yunnan) Co. v. United States*, 29 CIT 753, 763–64, 387 F. Supp. 2d 1270, 1280–81 (2005).

Pursuant to § 1667m(d), Commerce shall "promptly inform the person submitting the response of the nature of the deficiency" and "to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established" for completion of the review. Though the burden of creating a complete, accurate record ultimately rests on the respondent, Commerce must still ensure that the respondent is "fully aware of what information the Department [seeks] and the form in which it [seeks] the data." *SKF USA Inc. v. United States*, 29 CIT 969, 980, 391 F. Supp. 2d 1327, 1336 (2005).

If Commerce finds that the party's proffered explanation is unsatisfactory or untimely, it may "disregard all or part of the original and subsequent responses." 19 U.S.C. § 1677m(d). Conversely, Commerce "shall not decline to consider" necessary information if:

> (1) the information is submitted by the deadline established for its submission, (2) the information can be verified, (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination, (4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by the administering authority or the Commission with respect to the information, and (5) the information can be used without undue difficulties.

*Id.* § 1677m(e).

After determining that the use of facts otherwise available is appropriate, Commerce may further find that the record deficiency was caused by respondent's failure to act "to the best of its ability" in complying with Commerce's requests. *Id.* § 1677e(b). If Commerce reaches that

conclusion, it may use an "adverse" inference—known as AFA—when selecting among facts otherwise available. *Id.* The statute does not define what an adverse inference entails, but it should be a "reasonably accurate estimate of the respondent's actual rate . . . with some built-in increase intended as a deterrent to non-compliance." *F.lli De Cecco di Filippo Fara S. Martino S.p.A.*, 216 F.3d at 1032.[3]

## DISCUSSION

### I. Commerce reasonably used AFA to calculate Mukand's dumping margin

Mukand's first challenge to the *Final Results* relates to Commerce's application of AFA when selecting Mukand's dumping margin. Mukand asserts that since it complied with Commerce's requests for size-specific cost information, Commerce erred in concluding that Mukand failed to respond to the best of its ability. Pl.'s Mot. for J. on Agency R. ("Pl.'s Br.") at 2. And because a respondent's failure to act to the best of its ability is a prerequisite to the application of AFA, Mukand maintains that Commerce's AFA determination was unlawful. *Id.*

Mukand's argument rests on the wording of Commerce's questionnaires. Specifically, Mukand justifies its non-responsiveness on two grounds: (1) Commerce's questionnaires only technically asked for size-specific costs if there existed a reasonable, verifiable way of isolating and reporting those costs, and (2) in lieu of reporting size-based costs, Commerce authorized Mukand to narratively explain why it believed that any cost differences attributable to product size were insignificant. *Id.* at 3–4. Mukand asserts that it fully complied when it explained to Commerce that there existed no reasonable, verifiable way of reporting size-specific costs, and that in any event, variable costs did not significantly vary across product sizes. *Id.*

---

[3] The corroboration requirement in 19 U.S.C. § 1677e(c) constrains Commerce when selecting among potential AFA rates. Pursuant to § 1677e(c), when Commerce relies on "secondary information" for its AFA rate (as it has here), it must corroborate that information "to the extent practicable." The court does not address corroboration since Mukand has not raised it.

The Government maintains that Mukand's reliance on semantics masks the obvious meaning of Commerce's request—namely, that Mukand either report size-based costs or quantify and explain in a detailed narrative why it believes that size had an insignificant impact on variable costs.  Def.'s Opp'n to Pl.'s Mot. for J. on Agency Record ("Def.'s Br.") at 14–16.  Despite Commerce's five separate attempts to elicit the necessary cost information, suggestions regarding how Mukand could compile that information, and offers to clarify the substance of its requests, Mukand failed to comprehensively address Commerce's questions.  As a result, Commerce asserts, it reasonably concluded that Mukand failed to act to the best of its ability during the proceeding.  *Id.* at 20.

### A.  Necessary information was absent from the record

Mukand did not provide necessary information to Commerce in the proceeding below.  To accurately perform its less than fair value analysis, Commerce must compare "the normal value and export price (or constructed export price) of each entry of the subject merchandise." *Id.* § 1675(a)(2)(A).[4]  When calculating normal value, Commerce disregards foreign like product sales occurring below the cost of production.  *Id.* § 1677b(b)(1).  If no sales remain after disregarding below cost sales, Commerce constructs its own normal value for the subject merchandise.  *Id.*  Additionally, when Commerce compares physically dissimilar merchandise, it adjusts normal value to ensure a fair comparison between the foreign like product and the subject merchandise.  *Id.* § 1677b(a)(6); 19 C.F.R. § 351.411 (2012).  Commerce cannot calculate that DIFMER adjustment without knowing how certain physical characteristics affect the non-

---

[4] "'[T]he preferred methodology in reviews [is] to compare average [normal values] to individual export prices.'" *Kyd, Inc. v. United States*, 35 CIT __, __, 779 F. Supp. 2d 1361, 1369 n.3 (2011) (citing Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, at 843 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4178).

identical foreign like product's variable manufacturing cost. 19 C.F.R. § 351.411; *Thai Plastic Bags Indus. Co. v. United States*, 34 CIT __, __, 752 F. Supp. 2d 1316, 1325 n.22 (2010).

In this case, Mukand's failure to report size-based costs prevented Commerce from performing a sales-below-cost analysis, calculating a constructed value, and making applicable DIFMER adjustments. *See I&D Mem.* at 26. In sum, Commerce did not have all the information necessary to calculate Mukand's dumping margin.

### B. Commerce provided adequate notice of the record deficiency

Commerce also complied with its notification duties under 19 U.S.C. § 1677m(d). On five occasions, Commerce attempted to elicit size-specific cost information. On all but the first occasion, Commerce made clear that it was unsatisfied with Mukand's response and reiterated both what it needed and why that information was important. In its final questionnaire, Commerce even created a table for Mukand and offered to respond to any questions.

Thus, Mukand's assertion that Commerce never directly requested size-specific cost information is meritless.[5] Instead, the record reflects that Commerce repeatedly asked for "imperative" size-based costs regardless of whether the company tracked such costs in its normal books and records. Mukand's narrow focus on Commerce's direction to report those costs using a "reasonable" and "verifiable" method misses the broader picture. Based on the record as a whole, Commerce clearly included that language to *obtain* useable and necessary information, not to provide Mukand with a basis for evading its requests.[6]

---

[5] The court is mindful of the fact that Mukand is comprised largely of non-English speakers; however, that is true of most respondents in these proceedings. If Mukand was experiencing such difficulty in understanding Commerce's requests, it should have accepted Commerce's invitation for further discussion.

[6] Mukand does not appear to directly challenge Commerce's decision to disregard Mukand's narratives explaining why costs do not vary across product sizes. Nonetheless, Commerce was within its discretion in not accepting Mukand's vague, unsupported assertions. Commerce instructed Mukand to "explain" and "quantify" why size did not influence product costs, and Commerce reasonably found that Mukand's responses fell short of that threshold.

### C. An adverse inference was appropriate under the circumstances

Lastly, Commerce reasonably adopted an adverse inference when selecting among the facts otherwise available. The proper inquiry for AFA is not whether Mukand intended to thwart Commerce in its efforts to complete the record. Rather, "[t]he statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." *Nippon Steel*, 337 F.3d at 1383. A respondent fails to act to the best of its ability if it does not to "do the maximum it is able to do." *Id.* at 1382. Phrased differently, AFA is appropriate when a respondent has failed to "put forth its maximum effort to provide Commerce with full and complete answers to all inquiries." *Id.*

Mukand consistently avoided the substance of Commerce's size-based cost questions by offering only vague, unsupported assertions that the requested information was not reasonably available and that size did not significantly impact costs. Despite Mukand's repeated assertions that the information was not part of their normal records and otherwise not possible to track, it was suddenly able to provide the requested information after Commerce's preliminary decision to apply AFA. Moreover, Mukand's substantial experience with Commerce proceedings and the fact that other respondents were able to isolate size-based costs lends further support to Commerce's findings. Based on the foregoing, Commerce reasonably found that Mukand did not do the maximum it was able to do and that AFA was appropriate.

### II. Commerce reasonably employed total AFA

Mukand next argues that even if resort to AFA was reasonable, application of total AFA was not. Mukand claims that resort to total AFA violated Commerce's statutory mandate to accurately calculate dumping margins. Pl.'s Br. at 7. Further, Mukand maintains, Commerce's decision was inconsistent with its practice in prior proceedings of applying total AFA only to

"far more egregious conduct" and not to the comparatively less egregious conduct exhibited in this case. *Id.* at 8.  Because Mukand's sole failure was in not reporting size-specific costs, Mukand believes Commerce should have employed partial AFA. *Id.* at 9.

The Government asserts that it acted consistently with its past practice.  In support, it cites numerous instances where it employed total AFA in response to a foreign company's failure to provide product-specific cost of production or DIFMER adjustment information. Def.'s Br. at 18–20.  The Government argues that Mukand's responses similarly warranted total AFA since they were "so incomplete" that they could not serve as a reliable basis for reaching a final determination and could not be used without undue difficulty.  *See I&D Mem.* at 30.

### A. Framework for distinguishing total AFA and partial AFA

Neither statutory nor regulatory law reference the concept known as total AFA, but Commerce uses it administratively to refer to "Commerce's application of adverse facts available not only to the facts pertaining to specific sales for which information was not provided, but to the facts respecting all of respondents' sales encompassed by the relevant antidumping duty order." *Shandong Huarong Mach. Co. v. United* States, 30 CIT 1269, 1271 n.2, 435 F. Supp. 2d 1261, 1265 n.2 (2006).  Partial AFA, by contrast, is used "where there is useable information of record but the record is incomplete." *Wash. Int'l Ins. Co. v. United States*, Slip Op. 09-78, 2009 WL 2460824, at *8 n.18 (CIT July 29, 2009).

Case law has illuminated the circumstances Commerce should consider when deciding whether to apply total AFA or partial AFA.  Total AFA is appropriate "where none of the reported data is reliable or usable" because, for example, all of the "submitted data exhibited pervasive and persistent deficiencies that cut across all aspects of the data." *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011); *see also Foshan*

*Shunde Yongjian Housewares & Hardware Co. v. United States*, Slip Op. 11-123, 2011 WL 4829947, at *14 (CIT Oct. 12, 2011) (noting that total AFA involves a deficiency pertaining to "core, not tangential" information). Partial AFA may be required when the deficiency is only "with respect to a discrete category of information." *Foshan Shunde*, 2011 WL 4829947, at *14.

When applying total or partial AFA, Commerce is also bound by statutory constraints on its ability to disregard deficient information. Specifically, pursuant to 19 U.S.C. § 1677m(e), Commerce may only disregard "information" if it fails to meet any of five enumerated requirements. This court has previously deferred to Commerce's interpretation of "information" to encompass *all* the information that a respondent submits as opposed to discrete categories of information. *Steel Auth. of India, Ltd. v. United States*, 25 CIT 482, 486, 149 F. Supp. 2d 921, 928 (2001). This interpretation is reasonable. If Commerce was constrained to consider some submissions, but not others, respondents could manipulate the process by submitting only beneficial information. *Id.* As a result, "[r]espondents, not the Department, would have the ultimate control to determine what information would be used for the margin calculation," and the Department could not reliably calculate dumping margins. *Id.*

### B.  Commerce adequately supported its total AFA determination

In this case, Commerce decided that Mukand's submitted information collectively failed to satisfy at least two of the five requirements of § 1677m(e). In particular, in its Issues & Decisions Memorandum, Commerce found that:

> Mukand's failure to provide the requested data renders its response unusable for these final results under section 782(e) [§ 1677m(e)] of the Act. The information Mukand did provide was so incomplete that it could not serve as a reliable basis for reaching a final determination because without the cost information based on size, the Department cannot conduct an adequate sales-below-cost test or calculate an accurate DIFMER adjustment for size. For example, size specific sales prices are compared to size specific costs in the sales below cost test, so without size specific costs, an accurate sales-below-cost test cannot be performed.

> Furthermore, because the information was so incomplete, we find it cannot be used without undue difficulty.

*I&D Mem.* at 30.

Commerce could have reasonably concluded that Mukand's persistent failure to report size-based costs made the remaining information so incomplete that it could not "serve as a reliable basis for reaching a final determination." *See* 19 U.S.C. § 1677m(e)(3). To make an antidumping determination, the Department needs respondent data on U.S. sales, home market sales, cost of production, and constructed value. *Steel Auth. of India, Ltd.*, 25 CIT at 482, 149 F. Supp. 2d at 927. In this review, Commerce was missing a piece of cost information necessary to calculate the cost of production and constructed value. The absence of information so "vitally interconnected with other elements of the dumping determination" could have made Mukand's submitted information too incomplete for Commerce to reliably calculate a margin. *See* Issues & Decision Memorandum, A-533-810 (Sept. 14, 2004), at cmt. 1, p.12.

Moreover, because Commerce was unable to calculate cost of production or constructed value, it could have been unduly difficult for Commerce to apply partial AFA. Without cost information, Commerce could not disregard below cost sales. In that scenario, normally Commerce would find as AFA that all home market sales were below cost and, accordingly, look to constructed value. *See* Issues & Decision Memorandum, A-533-810 (Aug. 10, 2000), at Facts Available cmt. 1. However, here Commerce would also be unable to calculate constructed value without size-based cost information.[7]

---

[7] In this regard, the instant case is distinct from the prior stainless steel proceeding upon which Mukand relies to support its partial AFA argument. *See* Issues & Decision Memorandum, A-533-810 (Aug. 10, 2000). There, certain cost information was absent from the COP database, and Commerce found as AFA that all home market sales were below cost. *Id.* at Facts Available cmt. 1. Turning to CV, Commerce found that the respondent did submit useable CV information, but not in the format Commerce desired. *Id.* Commerce decided that a partial AFA was warranted given the deficiency, but rejected total AFA since the information was "sufficiently complete to serve as a reliable

Although Mukand posits that Commerce should have used other respondents' size-based data to fill the record gap, doing so would have impermissibly rewarded Mukand by allowing it to benefit from information provided by cooperative respondents.

Lastly, the fact that Commerce typically applies total AFA to more egregious conduct is not dispositive.  While most total AFA cases do involve more severe record deficiencies, Mukand has not persuasively cited any authority establishing that Commerce's practice is to employ partial AFA in analogous factual circumstances.  Based on the facts of this case, Commerce adequately supported its total AFA determination.  Commerce has repeatedly noted that cost information is a vital part of its dumping analysis.  *See I&D Mem.* at 30; Issues & Decision Memorandum, A-533-810 (Sept. 14, 2004), at cmt. 1; Issues & Decision Memorandum, A-489-808 (Mar. 21, 2000), at cmt. 1.  Given its importance, Mukand's missing cost information did not create a deficiency with respect to a "discrete category of information" such that only partial AFA would be appropriate.  *See Foshan Shunde*, 2011 WL 4829947, at *14.  Rather, Commerce reasonably found that Mukand's missing information was essential for multiple calculations, thereby warranting total AFA.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ordered that Mukand's Rule 56.2 Motion for Judgment on the Agency Record is **DENIED** and the *Final Results* are **SUSTAINED**.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: March 25, 2013
New York, New York

---

basis for reaching a determination without creating undue difficulties." *Id.*  Unlike in that proceeding, Mukand did not submit *any* size-based costs.